[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JOURNAL ENTRY AND OPINION
 I. {¶ 1} Plaintiff-appellant Russell Misseldine appeals the trial court's denial of his motion to compel discovery and its grant of summary judgment on behalf of defendants-appellees Corporate Investigative Services, Inc. ("C.I.S.") and InPhoto Surveillance, Inc. ("InPhoto"). Misseldine argues that InPhoto was uncooperative and deceptive in its discovery responses and caused unnecessary delay in filing certain motions, which will be detailed further below. Further, Misseldine argues that the trial court abused its discretion in denying his motion for an order to compel discovery and for sanctions. Finally, Misseldine argues that the court erred in granting summary judgment in favor of both appellees because there existed genuine issues of material fact.
 {¶ 2} We affirm in part, reverse in part and remand. Specifically, we affirm the trial court's grants of summary judgment in favor of the appellees with respect to the invasion of privacy, conversion and civil harassment claims. And we reverse and remand the trial court's grants of summary judgment with respect to the trespassing claim.
 II. {¶ 3} The events of this suit arose after Misseldine sued his then-employer Progressive Insurance for personal injuries he had allegedly suffered in a car accident. During the course of that suit, Misseldine discovered that Progressive had hired C.I.S. and InPhoto to investigate him. C.I.S. and InPhoto personnel[1] separately conducted surveillance of Misseldine; investigated into such things as his past residences and claims Misseldine made to the Ohio Bureau of Workers' Compensation; made telephone calls to Misseldine's home and place of employment to ascertain his whereabouts; and took garbage that Misseldine had left out for collection. Misseldine brought claims of trespass, invasion of privacy and conversion against both C.I.S. and InPhoto, and a claim of civil harassment (for the telephone calls) against InPhoto only.
 {¶ 4} Misseldine contends that both C.I.S. and InPhoto were unresponsive to discovery requests and that InPhoto filed a number of motions meant solely to cause delay and harassment. The record shows that C.I.S. and InPhoto provided Misseldine with the names of individuals who were involved in the investigations, but that neither appellee provided Misseldine with the social security numbers or residential addresses of those individuals. (C.I.S. did give such information about one former
employee.)
 {¶ 5} InPhoto and C.I.S. separately moved for summary judgment. InPhoto then filed a motion for protective order to stay all discovery pending the court's ruling on the motion for summary judgment. Misseldine responded with a motion to compel and request for sanctions against InPhoto for what Misseldine described as InPhoto and its counsel's "wrongful and dilatory conduct[.]" The trial court denied Misseldine's motion and granted InPhoto's motion for a stay of discovery pending resolution of the motions for summary judgment. Finally, the trial court granted summary judgment in favor of appellees.
 {¶ 6} Misseldine timely appealed and raises two assignments of error for this court's review: (1) that the trial court abused its discretion in denying his motion to compel and for sanctions against InPhoto and (2) that the trial court erred in granting summary judgment in favor of InPhoto and C.I.S.
 III. {¶ 7} In his first assignment of error, Misseldine argues that InPhoto and its counsel purposely interfered with discovery by giving incomplete and misleading answers. Misseldine further argues that InPhoto improperly submitted and relied on affidavits with the knowledge that they contained material falsehoods. Finally, Misseldine argues that InPhoto filed multiple motions without good cause and solely to delay and harass.
 A. {¶ 8} Misseldine's contention that InPhoto interfered with discovery stems from InPhoto's responses to Misseldine's request for interrogatories. Misseldine sought information regarding the individual investigators. InPhoto provided the names of Brett Lantz and Edward Zalewski, but listed InPhoto's address and explained that "[d]ue to issues pertaining to an employee's individual privacy rights, social security numbers and residential addresses are not provided. All employees may be contacted through InPhoto's attorney." In fact, Lantz and Zalewski were not employees of InPhoto at the time this response was served (February 7, 2002). Misseldine served a second set of interrogatories on February 21, 2002, after which InPhoto's counsel informed Misseldine's counsel that Lantz and Zalewski were no longer employed at InPhoto.
 {¶ 9} Misseldine contends that InPhoto's contradictory responses show its attempt to evade discovery. In other words, Misseldine argues that InPhoto (1) improperly implied that Lantz and Zalewski are employees and so could not divulge personal information about them and then (2) explained later that they were not in fact employees and so InPhoto was not responsible for turning over their personal information. InPhoto responds that it "did not represent that Lantz and Zalewski were current employees" in its response to Misseldine's first set of interrogatories and that it later stated unequivocally in the second response that they were former employees. InPhoto contends that Misseldine's confusion is his own fault.
 {¶ 10} InPhoto's response was less than accurate. Counsel's statement that InPhoto "did not represent that Lantz and Zalewski were current employees" does not quite square with its response that it would not turn over an "employee's" personal information and that all "employees" may be contacted through counsel. Nonetheless, we do not believe that any prejudice resulted. The activities alleged by Misseldine have largely been admitted by InPhoto and Misseldine was able to bring to light the facts that made up the basis of his claims.
 B. {¶ 11} Misseldine next argues that InPhoto and its counsel "secured false affidavits from" Lantz and Zalewski and submitted the affidavits knowing they were false. The "obvious material falsehoods" to which Misseldine refers concern the description of Misseldine's property. In their affidavits, Lantz and Zalewski state that the garbage they picked up from Misseldine's property was "at the curb[,]" was "within easy reach of the road," and was "placed on the front edge of the lawn on a public sidewalk[.]"
 {¶ 12} In his deposition, which was taken after these affidavits were served, Misseldine explains that he has no sidewalk, tree lawn or berm on his property and that his private property extends all the way to the street. Misseldine further stated in that deposition that he left his garbage out about six feet from the street for collection. Finally, Misseldine points out that InPhoto relied on the affidavits of Lantz and Zalewski in support of its motion for summary judgment, in which InPhoto argues that its investigators never trespassed on Misseldine's property.
 {¶ 13} InPhoto denies submitting false affidavits and explains that the discrepancies are simply the result of "the recollections of affiants long after the events in question" and that "any mistakes involving details of those events do not prove perjury." (Emphasis sic.)
 {¶ 14} Misseldine's argument is unpersuasive. As InPhoto shows, the contradictions were minor and cannot be held to have been knowingly false. And as will be detailed below, none of the discrepancies affects the resolution of the matter.
 C. {¶ 15} Misseldine next argues that InPhoto filed a number of motions with the intent to delay and/or harass. He specifically objects to the following motions: (1) a motion in opposition to Misseldine's motion for leave to file an amended complaint; (2) a motion for a protective order to stay discovery pending the resolution of motions for summary judgment; and (3) a motion in further support of the motion for the protective order.
 {¶ 16} This argument is not well taken. As InPhoto points out, its motion in opposition to Misseldine's leave to file his amended complaint was filed because Misseldine did not attach a copy of the proposed amended complaint to his motion. Further, the trial court granted InPhoto's motion for protective order and to stay discovery. Misseldine cannot complain that InPhoto filed frivolous motions when those motions were granted by the court.
 IV. {¶ 17} In his second assignment of error, Misseldine argues that genuine issues of material fact exist and that the trial court therefore erred in granting summary judgment in favor of InPhoto and C.I.S.
 A. {¶ 18} We review the court's grant of summary judgment de novo. "To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party." Rodic v. Koba (Dec. 7, 2000) Cuyahoga App. No. 77599 (citations omitted).
 B. {¶ 19} As stated above, Misseldine brought claims of trespass, invasion of property and conversion against both InPhoto and C.I.S. and a claim of civil harassment against InPhoto only. Misseldine argues that there are genuine issues of material facts and that neither appellee showed that it was entitled to judgment as a matter of law.
 {¶ 20} We hold first that there are no genuine issues of material fact. There are, as InPhoto admits, discrepancies between the information provided in the affidavits of Lantz and Zalewski and that from the deposition of Misseldine. The discrepancies, however, relate to the description of Misseldine's property and not to the actions taken by the personnel. And the actions of the personnel form the basis of Misseldine's complaint.
 {¶ 21} Specifically, the issues revolve around whether InPhoto and C.I.S.'s agents trespassed, invaded Misseldine's privacy and converted his property. Neither InPhoto nor C.I.S. denies that its agents took Misseldine's garbage. Therefore, whether Misseldine's property does or does not have a sidewalk, does or does not have a concrete berm, is irrelevant in deciding whether he has claims for trespass, invasion of property and conversion.
 {¶ 22} Because there are no genuine issues of material fact, the only remaining question then is whether, after construing the evidence most favorably for Misseldine, reasonable minds could reach only one conclusion, which is adverse to him with respect to the torts claimed.
 C. 1. {¶ 23} Misseldine's first claim is for trespass. "`A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue * * *.'" Apelv. Katz (1998), 83 Ohio St.3d 11, 19, quoting Linley v. DeMoss (1992),83 Ohio App.3d 594, 598. Further, a claim exists "even though such damages may be insignificant." Linley at 598. Further, the supreme court has defined a trespasser "* * * as one who unauthorizedly goes upon the private premises of another without invitation or inducement, express or implied, but purely for his own purposes or convenience; and where no mutuality of interest exists between him and the owner or occupant."Keesecker v. G.M. McKelvey Co. (1943), 141 Ohio St. 162, 166.
 {¶ 24} The evidence shows that on a few occasions, C.I.S. and InPhoto personnel drove up to Misseldine's property where an investigator stepped out of the car and took his garbage. The appellees argue that there is no evidence that Misseldine's property actually extends all the way to the street and that the personnel might not have actually stepped on Misseldine's property. Neither argument is persuasive.
 {¶ 25} Misseldine, in his deposition, stated that his property extended all the way to the street. Neither appellee has introduced any evidence to rebut that. Therefore, construing the evidence in Misseldine's favor, we find that his property extends all the way to the street.
 {¶ 26} Further, whether any of the appellees' personnel actually stepped onto Misseldine's property is not dispositive. One may commit a trespass by invading the airspace of the property of another. See, Restatement 2d of Torts, Section 159 ("a trespass may be committed on, beneath, or above the surface of the earth.") (Emphasis added.) See, also, Hannabalson v. Sessions (1902), 116 Iowa 457, 90 N.W. 93 (extending one's hand over the fence separating adjoining properties constitutes a trespass).
 {¶ 27} Therefore, C.I.S. and InPhoto's personnel did physically invade Misseldine's property without invitation or inducement, nor did any mutuality of interest exist between either C.I.S. or InPhoto and Misseldine.
 2. {¶ 28} The question thus is whether there was a privilege to enter onto Misseldine's property. InPhoto argues that the lack of "any fences, gates, `no trespassing' signs, or any indications that Misseldine did not impliedly consent to momentary public entries" shows that Misseldine did impliedly consent to such entries. C.I.S. argues that Misseldine, by allowing garbage collection, "has waived his right to claim trespass, with respect to individuals seeking access to his garbage." C.I.S. further argues that Misseldine has failed to show any damages.
 a. {¶ 29} We find InPhoto's argument, that the burden lies with the property owner to inform the world that he does not impliedly consent to an entry, unpersuasive. InPhoto cites to Reeves v. Fox TelevisionNetwork (N.D.Ohio. 1997), 983 F. Supp. 703, to support its argument that consent to trespassing may be implied. That is true, but the court also noted that "consent will not be implied by the plaintiff's failure to object to entry in advance[.]" Id. at 713, fn. 8. There is no evidence in the record that Misseldine consented, impliedly or otherwise, to private individuals entering his property.
 b. {¶ 30} C.I.S.'s argument, that Misseldine waived his right to claim trespass since he allowed garbage collection, also is unpersuasive. Misseldine's consent to enter his property to collect garbage, if it existed (and we can assume that it did), extends to those who collect garbage. It does not extend to anyone else. Otherwise, according to C.I.S., anytime a property owner consents to the entry of his land, he is without recourse against others who enter the land so long as they argue that others had entered the land for similar purposes. See, e.g., Todd v. Heil Windermere Storage Moving Co.
(Aug. 25, 1994), Cuyahoga App. No. 66129 (potential buyer, who had visited the property at issue on two previous occasions with the owner, was a trespasser when he (the potential buyer) later entered the property unaccompanied).
 c. {¶ 31} Finally, C.I.S.'s argument that Misseldine has not shown any damages, is not persuasive. Specifically, C.I.S. argues that, "in order to prevail on a trespass claim, `it is necessary to prove that the trespass proximately caused the harm for which compensation is sought and to prove the amount of damage.'" C.I.S. Brief at 10, quoting AllstateFire Ins. Co. v. Singler (1968), 14 Ohio St.2d 27, 29. That is not entirely accurate. The correct rule is that a showing of trespass entitles a plaintiff to at least nominal damages, but that "[i]n order to recover actual damages the plaintiff must prove that the trespass proximately caused that for which compensation is sought and the amount of those damages." Lamberjack v. Gyde (Nov. 13, 1993), Ottawa App. No. 92-OT-034. C.I.S. is therefore incorrect that Misseldine's failure to show actual damages entirely precludes him from prevailing in his trespass claim.
 {¶ 32} Misseldine has shown trespass, but the issue of damages remains unresolved. We therefore reverse and remand for determination of damages, which may be only nominal.
 D. 1. {¶ 33} Misseldine's next claim was for invasion of privacy, which is "the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Housh v.Peth (1956), 165 Ohio St.3d 35, paragraph two of the syllabus.
 {¶ 34} Misseldine states that "there is more than ample evidence, when viewed in a light most favorable to Misseldine, that Appellees violated Misseldine's right to privacy by intruding into and invading Misseldine's personal life and private affairs." Misseldine Brief at 28. Specifically, Misseldine asserts that InPhoto secured personal information about Misseldine (address, date of birth, physical description and social security number), discovered his past residences, requested information from the Ohio Department of Transportation, discovered his place of employment, made telephone calls to his home and his employer, and took his garbage.
 {¶ 35} Misseldine asserts that C.I.S. secured his personal information (address, home telephone number, social security number, date of birth, driver's license number, physical description, vehicle registration information, and information about Misseldine's employer), got information from the Ohio Bureau of Workers' Compensation, obtained a copy of his driver's license abstract, discovered his past residences, telephoned his home and employer, surveilled him, and took his trash.
 {¶ 36} Finally, Misseldine asserts that both parties undertook such activities to discover private information about him and to then "publish this information to a third party for profit." Misseldine Brief at 32.
 2. {¶ 37} There is no evidence that C.I.S. or InPhoto engaged in the "unwarranted appropriation or exploitation of one's personality." Housh. Further, Misseldine argues without specificity that the appellees, however, did engage in "the publicizing of one's private affairs with which the public has no legitimate concern" and in the "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Id.
 a. {¶ 38} Misseldine has not shown that the appellees publicized his private affairs. "To prevail on her public disclosure of a private fact claim, [a plaintiff] must establish, inter alia, that private information was communicated `to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. . . .'" Stonum v. U.S. Airways, Inc. (S.D.Ohio 1999),83 F. Supp.2d 894, 905, quoting Seta v. Reading Rock, Inc. (12th Dist. 1995), 100 Ohio App.3d 731, 740.
 {¶ 39} The information gathered by the personnel was handed over to their employers (C.I.S. and InPhoto) for the purposes of investigating whether Misseldine's claim against Progressive was legitimate. There was no communication "to the public at large, or to so many that the matter must be regarded as substantially certain to become one of public knowledge." Seta at 740. Because of this conclusion, we need not reach whether the information gathered by the appellees constitutes private affairs.
 b. {¶ 40} Finally, Misseldine has not shown that the phone calls by the appellees constituted "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Housh. Appellees' personnel made a few phone calls to Misseldine's home and place of employment. Misseldine has not shown that these phone calls intruded into his private activities to such an extent that they caused "mental suffering, shame or humiliation[.]" A few phone calls do not constitute such wrongful intrusion.
 {¶ 41} It is proper to mention here that Misseldine's claim for civil harassment, based on the phone calls, fails since no such claim is recognized in Ohio.
 E. {¶ 42} Finally, Misseldine argues that C.I.S. and InPhoto converted his property when they took his garbage from his property. A conversion is "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement 2d Torts, Section 222A.
 {¶ 43} C.I.S. and InPhoto personnel did "intentional[ly] exercise dominion or control" over Misseldine's garbage. Therefore, the key analysis is whether C.I.S. and InPhoto interfered with Misseldine's "right * * * to control" his garbage. We hold that it does not because Misseldine, once he placed the garbage out for collection, had abandoned his right to control the items of garbage.
 {¶ 44} The analysis is well stated by a California appellate court:
 {¶ 45} "Documents which have been placed in an outdoor trash barrel no longer retain their character as the personal property of the one who has discarded it. By placing them into the garbage, the owner renounces the key incidents of ownership — title, possession, and the right to control. As the Indiana Court of Appeals stated in reversing an award of damages for conversion based on the defendants' removal of documents from a trash [d]umpster, `there is a widely held and long-standing doctrine that personalty discarded as waste is considered abandoned.'" Ananda Church of Self-Realization v. Massachusetts Bay Ins.Co. (2002), 95 Cal.App.4th 1273, 1282, quoting Long v. Dilling MechanicalContractors (Ind.App. 1999) 705 N.E.2d 1022, 1025.
 {¶ 46} Here, there is no dispute that Misseldine intended to relinquish his property rights in the garbage. That he intended to relinquish them only to the garbage collectors is immaterial. He admitted in his deposition that he had no interest in it. The court properly granted summary judgment as to Misseldine's claim for conversion.
 V. {¶ 47} We therefore affirm in part, reverse in part and remand. We hold that the trial court properly granted summary judgment in favor of the appellees with respect to the invasion of privacy, conversion and civil harassment claims. Further, we hold that the trial court erred in granting summary judgment with respect to the trespass claim. We therefore reverse the trial court's judgment with respect to the trespass claim and remand for proceedings consistent with this opinion.
[1] The actions taken by the personnel of C.I.S. and InPhoto are substantially similar, though we will describe the differences where relevant. Further, the identities of the individual personnel are irrelevant for all but one of the issues under review. Therefore, for the sake of convenience and when it will not cause confusion, we will generally refer to "the personnel" when describing the actions taken by C.I.S. and InPhoto's employees that make up the substance of Misseldine's case.